UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS L. C.,<br><br>Petitioner,<br><br>v.<br><br>TODD LYONS et al.,<br><br>Respondents. | No. 1:25-cv-01851-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Petitioner Carlos L. C.'s[1] ("Petitioner") Motion for a Preliminary Injunction.[2] (ECF No. 2.) Respondents Todd Lyons, Kristi Noem, Pamela Bondi,

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. Accordingly, the Clerk of Court is directed to update the docket to reflect this change.

[2] In light of Respondents' non-opposition to treating Petitioner's Motion for a Temporary Restraining Order as a Motion for a Preliminary Injunction (ECF No. 14 at 2 n.1), and given that the standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction, *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), the Court hereby treats this motion as a motion for a preliminary injunction.

and Tonya Andrews (collectively "Respondents") filed an opposition. (ECF No. 14.) Petitioner filed a reply. (ECF No. 15.) For the reasons set forth below, Petitioner's Motion is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a citizen and national of Honduras who entered the United States in 2000 when he was five years old with his half-brother's father. (ECF No. 4-1 ¶¶ 1–2.) Petitioner grew up in New Jersey with his family, two of whom are U.S. citizens. (*Id.* at ¶ 3.) Petitioner states he speaks English better than Spanish and feels "American in every way." (*Id.*)

Petitioner was first detained by U.S. Immigration and Custody Enforcement ("ICE") in 2021 after being transferred to the Elizabeth Detention Center from criminal custody. (*Id.* ¶ 5.) Petitioner had been placed into criminal custody after pleading guilty to unlawful possession of a weapon. (*Id.* ¶¶ 5–6.) It was while he was in criminal custody that Petitioner learned that he had been ordered removed on October 16, 2000, in a hearing conducted in absentia. (ECF No. 1-3 at 7–8.)

On June 7, 2022, Petitioner filed a Motion to Reopen his removal proceedings claiming neither he nor his legal guardian ever received the notice to appear. (ECF No. 1-3 at 8.) On October 12, 2022, an immigration judge denied Petitioner's motion to reopen, which Petitioner then appealed to the Board of Immigration Appeals ("BIA"). (*Id.* at 3.) On October 17, 2023, Petitioner was released on an Order of Supervision ("OSUP"). (ECF No. 1-2.) On December 15, 2023, the BIA remanded Petitioner's case for a determination on whether Petitioner could meet his burden of demonstrating his statutory eligibility for asylum and withholding of removal. (ECF No. 1-3 at 4.) The BIA considered evidence Petitioner submitted on appeal showing at least eight members of his extended family were murdered in Honduras. (*Id.*) Petitioner's case was thus reopened after the BIA's remand order. (ECF No. 4-1 ¶ 11.) On the advice of counsel, Petitioner understood this to mean he was no longer subject to the OSUP because he no longer had a final order of removal. (*Id.* ¶ 12.) Petitioner's next hearing is set for 2027. (*Id.* ¶ 11.)

At the end of August 2025, Petitioner received a letter requiring him to check-in with ICE on September 8, 2025. (*Id.* ¶ 13.) At the check-in, Petitioner was detained and told it was because he was "not legal in the country." (*Id.* ¶ 15.) Petitioner was also told it was because he

did not go to his last check-in. (*Id.* ¶ 16.)

Petitioner was first taken to the Elizabeth Detention Center in New Jersey, then transferred to Louisiana, then Arizona, then to the Golden State Annex in California where he is currently detained. (*Id.* ¶ 19.)

On October 24, 2025, Petitioner requested a bond redetermination hearing before an immigration judge. (ECF No. 4 at 4.) The immigration judge found she did not have jurisdiction to hear Petitioner's request because he was an applicant for admission under the BIA's decision in *Matter of Yajure Huratdo*, 291 I. & N. Dec. 216, 225 (BIA 2025). (*Id.*; ECF No. 1-4 at 1.) On December 4, 2025, Petitioner again requested a bond redetermination in light of the decision in *Maldonado Bautisa v. Santacruz,* No. 5:25cv-1873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 25, 2025). (ECF No. 4 at 4; ECF No. 1-4.) On December 5, 2025, the immigration judge again found she did not have jurisdiction because Petitioner was an applicant for admission and denied the request. (ECF No. 1-4.)

On December 15, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) The same day, Petitioner filed a motion for a TRO and/or a preliminary injunction. (ECF No. 2.) At that time, Petitioner had been detained for 98 days and had not received a bond hearing. (ECF No. 4 at 23.)

## II. STANDARD OF LAW

A preliminary injunction is an extraordinary remedy. For a preliminary injunction to issue, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating such a motion, a district court may weigh a petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are "serious questions

on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction. *Id.* at 1134–35.

## III. ANALYSIS

### A. Likelihood of Success on the Merits

Petitioner claims his mandatory detention is unlawful and violates his due process rights, the Immigration and Nationality Act ("INA") and its implementing regulations, and the Administrative Procedures Act ("APA"). (ECF No. 1.) In opposition, Respondents argue Petitioner is an applicant for admission and therefore his mandatory detention is lawful under 8 U.S.C. § 1225(b)(2)(A). (ECF No. 14 at 3.) The Court begins by examining the statutory basis for Petitioner's detention before turning to Petitioner's due process claim.[3]

#### *i. Statutory Claim*

The Court begins with the central dispute in this case: whether Petitioner's immigration detention is governed under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") or 8 U.S.C. § 1226(a) ("§ 1226(a)"). Section 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. However, § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the Government has broad discretion whether to release or detain the individual. *Id.* Further, § 1226(a) provides several layers of review for an initial custody determination. *Id.* It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Petitioner claims the text, context, legislative and statutory history of the INA all

---

[3] Because the Court finds Petitioner's statutory and due process rights were likely violated, it declines to address Petitioner's other claims.

demonstrate that 8 U.S.C. § 1226(a) governs his detention — not 8 U.S.C. § 1225. (ECF No. 4 at 10.) Respondents on the other hand, despite acknowledging courts in this district have found otherwise, contend Petitioner is an "applicant for admission" and is therefore subject to mandatory detention under § 1225(b)(2). (ECF No. 14 at 3.)

This Court previously noted substantial ink has been spilled on this issue. *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025). It finds it need not spill any more, particularly when it has made its position clear. Section 1225(b)(2) applies only to noncitizens "seeking admission" — a category that does not include noncitizens like Petitioner who have lived within the United States for twenty-five years. *See id.* (explaining this Court's reasons for rejecting Respondents' arguments under analogous factual circumstances). Absent a higher court order holding otherwise, this Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b)(2). Petitioner is subject to § 1226(a) and is therefore entitled to the process that statute requires, including a bond hearing at a minimum.

*ii. Due Process Claim*

Petitioner argues his continued detention without a hearing violates his due process rights. (ECF No. 4 at 5–14.) Respondents do not directly address this argument, instead merely relying on their argument that Petitioner is subject to mandatory detention under § 1225(b)(2) and therefore unlikely to prevail on his claims. (ECF No. 14 at 3.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there

exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a) Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restrain — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id*. (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros*, 2025 WL 2637503, at *6. To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Petitioner argues the time he has spent at liberty following his initial release from detention, as well as the government's implicit promise that any custody redetermination would be based on the same criteria, demonstrates he has a protected liberty interest. (ECF No. 4 at 14.) In response, Respondents fail to contest these arguments. (*See generally* ECF No. 14.) Instead, Respondents merely reiterate their position that Petitioner is unlikely to prevail on his habeas petition because he is subject to mandatory detention under § 1225(b)(2). (*Id.* at 3.) The Court rejects this argument as set out above and need not repeat its findings here.

Here, the Court finds Petitioner has developed "enduring attachments of normal life" as

described in *Morrissey*, 409 U.S. at 482. Even setting aside the fact Petitioner has lived in the United States for the past twenty-five years, Petitioner was released on an Order of Supervision over two years ago after it was determined he was not a flight risk or danger to the community.[4] (ECF No. 4 at 14.) Since then, Petitioner has not had any issues with law enforcement. (ECF No. 4-1 ¶ 9.) Further, at the end of 2023, the BIA remanded Petitioner's case for determination of whether Petitioner was eligible for asylum and withholding of removal. (ECF No. 1-3 at 4.) For over two years, Petitioner believed the Government was no longer seeking to remove him given these proceedings. (ECF No. 4 at 14–15.) Petitioner has continued to live with his family and developed strong attachments to his community. (ECF No. 4-1 ¶ 2) For these reasons, Petitioner has a liberty interest in his release from immigration detention protected by the Due Process Clause.

*b) Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz*, 53 F.4th at 1206. As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. Prior to his detainment, Petitioner had been out of custody for approximately two years during which

---

[4] Petitioner argues he was not subject to an OSUP at the time of his re-detention. (ECF No. 4 at 15.) Respondents do not engage with this argument. (*See generally* ECF No. 14.) The Court finds it need not resolve this question, because even if Petitioner had an OSUP, the revocation of the OSUP under these circumstances violated Petitioner's due process rights.

he complied with his check-in requirements. (ECF No. 4 at 3.) Having lived in the United States for twenty-five years, Petitioner has established a life filled with strong family and community ties. (*Id.* at 22.) The length of time Petitioner has been in the United States as well as his established relationships creates a weighty private interest in maintaining his liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. In fact, Petitioner has twice been denied a bond hearing. (ECF No. 4 at 4.) "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted). Petitioner represents he has attended every requisite check-in as mandated under his OSUP and Respondents do not contest this. (ECF No. 4 at 3; *see generally* ECF No. 14.) Without any procedural safeguards to determine whether his current detention is justified, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). The Government cannot credibly claim it is burdened by providing the minimal procedural safeguards to which Petitioner is entitled. Nor does it make any attempt to do so. (*See generally* ECF No. 14.) Indeed, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum case than to continue to detain him.

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is due a hearing to determine whether his detention was warranted. Accordingly, with respect to his due process claim, Petitioner has shown he is likely to succeed on the merits.

B. <u>Irreparable Harm</u>

The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE

detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 999. Here, Petitioner has extensively detailed his experience being denied physical and mental healthcare while in immigration detention. (ECF No. 41 ¶¶ 21–30.)

Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez,* 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). In addition to harms imposed by continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claims. Thus, the Court finds Petitioner has suffered irreparable harm.

C. Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). Moreover, the public has a strong interest in ensuring its government follows the law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are staggering[.]" *Hernandez*, 872 F.3d at 996; *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.").

As discussed above, Petitioner is likely to succeed in proving that Respondents have violated federal laws depriving him of his constitutional rights and liberty. Additionally,

Respondents are not harmed by their sworn duty to follow the law. *See Zepeda*, 753 F.2d at 727. Thus, the balance of equities and public interest factors weigh in Petitioner's favor.

Having found that Petitioner is likely to succeed on the merits of his constitutional claims, this Court finds that release is warranted to return to the status quo *ante litem* pending final resolution on Petitioner's habeas petition. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo *ante litem* is "the last uncontested status which preceded the pending controversy.").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's Motion and issues the preliminary injunction set forth below. IT IS HEREBY ORDERED:

1. Petitioner's motion for a preliminary injunction (ECF No. 2), is GRANTED;
2. Respondents must IMMEDIATELY RELEASE Petitioner from custody under the same conditions as he was released prior to his September 8, 2025 detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.
4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).
5. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

6. Within fourteen (14) days of the date of this Order, the parties shall file a joint status report addressing the parties' plan to proceed with this action. The joint status report should address, at minimum, the date and conditions of Petitioner's release, whether parties believe the habeas petition is moot, whether parties anticipate any further motions practice.

IT IS SO ORDERED.

Date: December 19, 2025

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE